972 F.2d 341
 141 L.R.R.M. (BNA) 2152
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
N.L.R.B., Petitioner,
v.
VISADOR CO., Respondent.
 No. 91-1867.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 4, 1992
Decided: August 21, 1992
 
 On Application for Enforcement of an Order of the National Labor Relations Board.
 ARGUED: David S. Habenstreit, National Labor Relations Board, Washington, D.C., for Petitioner.
 C. Thomas Davis, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, Georgia, for Respondent.
 ON BRIEF: Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Linda Dreeben, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Petitioner.
 Robert O. Sands, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, Georgia, for Respondent.
 
 
 1
 N.L.R.B.
 
 
 2
 Order enforced.
 
 
 3
 Before MURNAGHAN and WILLIAMS, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 The National Labor Relations Board ("Board") has filed an application for enforcement of a decision and order it issued against the Visador Company on August 8, 1991. The Board affirmed the rulings, findings and conclusions and adopted the recommended order of Administrative Law Judge Claude R. Wolfe, who found that the Visador Company violated sections 8(a)(1) and (a)(3) of the National Labor Relations Act ("Act"), as amended, 29 U.S.C. §§ 158(a)(1) and (3). The Visador Company, as respondent, has contended that the order is not supported by substantial evidence in the record as a whole. We hereby enforce the order.
 
 I.
 
 5
 Visador Company is a Delaware corporation that has a plant in Marion, Virginia for the manufacturing of wooden stair parts. The United Steelworkers of America filed a charge against Visador before the Board, alleging, inter alia, (1) violations of section 8(a)(3)[1] of the Act based on the discharge of employee James Ray Powers because of his activities on behalf of the union, to discourage union membership; and (2) violations of section 8(a)(1)[2] of the Act by campaigning against the union on company time while disciplining union supporters for the same conduct, threatening employees with loss of their jobs, questioning employees about union activities, and spying or pretending to spy on union activities. A hearing was held before Judge Wolfe on December 12 and 13, 1990. Visador defended on the grounds that no anti-union conduct occurred, and that the termination of Powers was completely justified by his own intentional misconduct.
 
 
 6
 Regarding the discharge of Powers, there was testimony before Judge Wolfe as to his involvement in soliciting employees to support unionization. Powers was the Visador employee who initially contacted the United Steelworkers in April, 1990 about organizing a union at Visador. Meetings about unionization had taken place among Visador employees and a campaign was underway. Powers had worn a union t-shirt at work, attended union meetings, and distributed pencils with the union insignia to employees. Powers was discharged on July 13, 1990, and the union lost a representation election in August.
 
 
 7
 As to the events on the day Powers was discharged, the testimony revealed a dispute as to whether or not Powers intentionally harassed an anti-union employee, Reese Maloyed, by spilling over a cart which held a large pile of wood in the direction of Maloyed, three separate times. Powers was working at a ripsaw next to Maloyed, who also was working at a ripsaw, a machine designed for cutting pieces of wood. The wood is then stacked on a cart. Powers' cart was between Maloyed and himself. Maloyed testified that Powers pushed the wood off the cart in his direction, and then laughed, along with other prounion employees. Three employees who had complained to Visador with Maloyed about Powers' conduct testified that Powers dumped the wood three times and that it appeared to be intentional. Powers testified that the wood only fell off once, and that it was unintentional. Powers' testimony was supported by that of Roy Owens, who was "tailing the ripsaw" for Powers that day (while Powers pushed the wood through the ripsaw, Owens caught the wood and stacked it on the cart).
 
 
 8
 However, the testimony was not in dispute as to the events following the alleged harassment. Maloyed and the three employees who subsequently testified about Powers' conduct had gone to the office of supervisor Tim Fout to complain. All four were pro-employer employees who had worn anti-union t-shirts at work, and Powers was known to be organizing in support of unionization. Maloyed said to Fout that Powers was harassing him and asked for Powers to be removed from the saw because he was endangering Maloyed. Fout asked the four to provide a written statement about the events. He then called Powers in to the office and asked him about the incidents. Powers contested the story that had been told to Fout, claiming that the wood fell only once, accidentally. Fout then gave Powers a discharge slip that had already been written. After Powers requested an opportunity to bring in his own witnesses, Fout refused, and he further refused to discuss the issue when another supervisor, Charles Neitch, was brought in to discuss the termination. Owens was never asked by Visador to give his account of the incidents, nor were other employees in the area at the time ever questioned by Visador.
 
 
 9
 In support of the charge of discriminatory termination, there was testimony regarding an incident that occurred one year earlier, with the claim being made that the incident was similar but was treated disparately. At that time, one employee, Ronald Boardwine, had intentionally placed an oversized piece of wood into the cart of another employee, Mark Blevins, several times, deliberately to annoy him. Blevins became angry and tossed the piece of wood onto the floor towards Boardwine. The wood struck Boardwine's foot and he was injured, missing two days of work. Boardwine told supervisor Fout about the incident. Supervisor Neitch told the department that someone was injured by horseplay and that such conduct should cease, but no disciplinary action was taken.
 
 
 10
 Testimony was given by several employees as to the charge of interfering with union organizing. One employee testified that a supervisor told her not to talk to anyone about the union. She was then given a verbal disciplinary warning for talking to another employee about the union. Another employee was called into a meeting with several supervisors for her involvement in the distribution of pencils with the union insignia on them and she was told that Visador would have to enforce the company's rule against soliciting on company time. Yet employees testified about observing other employees solicit for such non-union related activities as church fund-raisers and high school fund-raisers on company time. One employee testified as to threats made to him by a supervisor regarding his intention to attend a union meeting.
 
 
 11
 Judge Wolfe found that there was no evidence of an effort to create an impression of surveillance of union supporters. He found a violation of section 8(a)(1) in the threat of discharge made to an employee for talking about the union. He also found a violation of section 8(a)(1) in the disparate treatment of employees who solicited or distributed at work, in that the union distribution was disciplined and other solicitation was not.
 
 
 12
 Regarding the discharge of Powers, Judge Wolfe found that the version given by Maloyed and the witnesses in support of that version was more believable. Even finding, however, that Powers deliberately harassed Maloyed by spilling the wood, Judge Wolfe found that the discharge was unlawful. That was based on findings as to (1) the disparity between the treatment of Blevins after he injured Boardwine by intentionally throwing wood in his direction, not leading to any disciplinary action, and the harassment here not resulting in injury but leading to the discharge of Powers; and (2) the events after the reports about Powers' misconduct, which demonstrated a "rush to judgment" and discharge of one known to be a union supporter. Based on those factors, Judge Wolfe found that Powers' activities on behalf of the union were part of the motivation behind the discharge, and further found that Visador failed to meet its burden of demonstrating that Powers nonetheless would have been discharged even without such union activity.
 
 
 13
 Visador was ordered, inter alia, to cease and desist from discouraging membership in the union, and to offer reinstatement and back pay to Powers. A panel of the Board affirmed the rulings, findings and conclusions of Judge Wolfe, and adopted his recommended order.
 
 II.
 
 14
 Visador has contested the conclusion that the discharge of Powers constituted a violation of section 8(a)(3) of the Act, but has not contested the finding of violations of section 8(a)(1) that were based on the anti-union conduct of Visador supervisors. The allocation of the burdens of proof in a complaint alleging unlawful discharge because of union activities was addressed in Wright Line, 251 N.L.R.B. 1083 (1980), enf'd, 662 F.2d 899 (1st Cir. 1981), cert. denied, 455 U.S. 989 (1982) and was accepted as a not impermissible construction of the statute in N.L.R.B. v. Transportation Management Corp., 462 U.S. 393 (1983). The General Counsel has the burden of proving that a discharge was "based in whole or in part on antiunion animus or, as the Board now puts it, that the employee's protected conduct was a substantial or motivating factor in the adverse action." Transportation Management, 462 U.S. at 401 (discussing Board decisions). An employer can "avoid being adjudicated a violator by showing what his actions would have been regardless of his forbidden motivation." Id. That showing is an affirmative defense as to which the employer has the burden of proof. Id. at 402.
 
 
 15
 In considering the findings of fact of the Board, an appellate court must sustain those findings that are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); N.L.R.B. v. Frigid Storage, Inc., 934 F.2d 506, 509 (4th Cir. 1991). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951) ( quoting Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229 (1938)). "[T]he requirement for canvassing 'the whole record' in order to ascertain substantiality" is not intended to permit the reviewing court to "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. at 488.
 
 
 16
 Given that limited standard of review, we affirm the Board's decision to adopt the findings and conclusions of the ALJ and to adopt his recommended order. There is clearly "substantial evidence" in the record to support the finding that Visador would not have discharged Powers if not for his participation in protected activity. Visador was alleged to have taken numerous actions to interfere with the rights of the employees to organize as a union, and some of those activities were found by Judge Wolfe to constitute violations of section 8(a)(1) of the Act. Powers was a key union organizer and Visador supervisors were well aware of that fact. The supervisor who discharged Powers had prepared a termination slip solely on the basis of a complaint by four employees known to be against the union, before even questioning Powers as to his version. After asking Powers what happened, no further investigation was conducted. Powers' request that other observers be questioned was denied. One year earlier, a similar incident occurred in which an employee intentionally endangered another employee, and in fact caused injury to that employee, but he was not disciplined. These facts strongly support the inference that Visador would not have summarily discharged Powers without further investigation of the complaint if he had not been engaged in pro-union activity.
 
 
 17
 Visador's attempt to challenge the Board's decision is without merit. Visador has argued, first, that no prima facie case as to the inference that protected conduct was a motive for the discharge was made out, and second, that Visador had adequately demonstrated that the discharge would have occurred even in the absence of Powers' protected union activity. Visador's arguments primarily attack the inferences that are drawn from the facts, not the facts themselves. Visador argues that there is no substantial evidence to support any other finding than that Powers was discharged solely on the basis of his serious misconduct.
 
 
 18
 In arguing that there was no substantial evidence to support the finding as to anti-union motivation, Visador has attacked the finding that the incident one year earlier was similar. Visador has argued that (1) Blevins threw only one board at Boardwine, while Powers dumped a load of wood; (2) Blevins accidentally hit Boardwine, while Powers intentionally dumped the wood; and (3) Blevins tossed the wood because he was wrongfully provoked by the harassing conduct of Boardwine, while Powers unjustifiably dumped the wood solely to harass Maloyed for legitimate anti-union sentiments. If Powers' conduct was more serious, then it is not disparate treatment to have treated him more severely. See Restaurant Corp. of America v. N.L.R.B., 827 F.2d 799, 806 (D.C. Cir. 1987). Thus, if there was no substantial evidence to support a finding that the incidents were similar, then reliance on that finding to infer improper motivation would be unacceptable. The argument, however, is unavailing. Both incidents involved similar intentional harassment that created a risk of injury. In one incident, the wrongdoer actually caused injury, even if by accident, and no disciplinary action was taken. Here, no injury was caused, and the wrongdoer was summarily dismissed. Moreover, if Visador had taken into account the justification that Boardwine had provoked Blevins in its decision to treat Blevins leniently, then why fill out a termination slip for Powers before he had even given his account of the incident? The finding that the incidents are similar, and were treated quite differently, is supported by substantial evidence.
 
 
 19
 Visador also has attacked the finding that the "rush to judgment" demonstrates anti-union motivation. That attack is extremely weak. Visador has argued that Powers was not entitled to call in any witnesses to support his position because Fout already knew that Powers had lied and that the alleged witnesses would also lie. Visador has further argued that after Fout heard "four independent accounts" describing Powers' dangerous conduct, discharge on that basis alone was fully warranted and would have occurred even in the absence of Powers' pro-union activity. Yet Visador does not address the fact that the termination slip was written by Fout even before Powers allegedly lied to Fout, and that these four "independent" accounts were proffered by those known to be anti-union, about someone known to be pro-union, during a heated union campaign in which Visador had engaged in unlawful anti-union conduct. There is clearly substantial evidence in the record to support the finding that the "rush to judgment" was based on Powers' pro-union activity.
 
 
 20
 Because there is substantial evidence to support the finding of a violation of the Act in the discharge of Powers, the Board's order is hereby
 
 
 21
 ENFORCED.
 
 
 
 [1]
 It is unlawful to discriminate"in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage" union membership. 29 U.S.C. § 158(a)(3)
 
 
 [2]
 "It shall be an unfair labor practice for an employer ... to interfere with, restrain or coerce employees in the exercise of the rights guaranteed" in the section of the Act that guarantees the right to form, join and assist labor organizations. 29 U.S.C. § 158(a)(1)